# CARLIN *v.* CRUMPTON.

PATENTS; INTERFERENCE; OPERATIVENESS.

In an .interference· involving the invention of an improvement or modifi-
cation of a register or totalizer used· in the construction of cash
registers, adding machines, etc., where the question was as to the
operativeness 'of the device of one of the parties, and it appeared
that correct results in the use of his machine could only be obtained
by the application by the operator, although at irregular and un-
certain intervals, of certain rules, while his specifications contained
no suggestion that rules would have to be applied to reach the
objective result, and that with such rules the operation of the ma-
·chine became so complex ·as .to render it· impractical as compared
with the other party's machine, it was *held* that the latter party
was entitled to an award of priority.

No. 1021. Patent Appeals.   Submitted March 14, 1916.   Decided April 24,
1916.

HEARING on an appeal from a decision of the Commissioner
of Patents in an interference proceeding.          *Affirmed.*

The facts are stated in the opinion.

*Mr. B. C. Stickney, Mr. Delos G. Haynes, Mr. H. C. Mc-
Cartney,* and *Mr. Edward Thomas* for the appellant.

*Mr. L. A. Williams* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of
Patents in an interference proceeding awarding priority of the
invention in issue to appellee, William J. Crumpton.   The
issue of the interference is in nine counts, of which the following
are descriptive:

"1. In a totalizer the combination of figure wheels, means for moving the units figure wheel one step whenever the figure wheel of highest order crosses the zero point, said figure wheels having complementary sets of figures, and means for indicating which of said sets of figures is to be read."

"6. A totalizer provided with figure wheels and having means for moving the units wheel one step whenever the figure wheel of highest order, crosses the zero point.

"7. In a calculating mechanism, adding and registering means and tens carrying mechanism therefor adapted to operate in an endless chain of carrying operations from first to last and from last to first, and selector keys to determine and regulate the extent of operations of said registering means."

The invention is described by the Examiner of Interferences in his opinion, as follows:

"The invention in issue is an improvement or modification of the well-known register or totalizer used in the construction of cash registers, adding machines, etc. As commonly found in the prior art it consists of a series of number wheels equal in number to the number of digits of the largest number to be registered. The number wheel corresponding to each digital order, that is, units' order, tens' order, hundreds' order, etc., bears the numerals from 1 to 9 followed by a zero, the ten characters being equally spaced about its periphery. Each number wheel is also provided with means for engaging with a carrying device in such manner that as it passes from 9 to zero it will advance the number wheel of the next higher order $\frac{1}{10}$ of a revolution. It is also commonly true of such devices that each number wheel when passing its carrying position in a reverse direction, that is, from zero to 9, will co-operate with the carrying device to rotate the number wheel of next higher order $\frac{1}{10}$ of a revolution in the same, that is, the reverse direction. It is believed that such devices are so well known as a part of the prior art that further description is unnecessary.

"With a register or totalizer such as that described in the preceding paragraph, a number may be added to another pre-

viously registered by successively advancing the number wheels corresponding to the various digital orders of the number to be added, angular distances relatively proportional to the digits of such number. With such a register any series of numbers may be added arithmetically, and numbers may also be subtracted except only that the correct result will not be directly indicated when a number is subtracted which is greater than the sum of the numbers previously added.

"It appears from the applications of each of the parties to this interference that the invention in issue was intended to enlarge the scope of usefulness of the register or totalizer of the prior art by making it possible to add and subtract numbers irrespective of their relative magnitude, if within the limits of the machine, and to indicate the result directly both in magnitude and in character, that is, whether positive or negative."

The manner in which this result could be attained by the invention is stated by the Assistant Commissioner as follows: "If each number wheel of a totalizer is provided with a second set of numerals paired with the original set and arranged so that the sum of each pair is 9, the result of the subtraction where a larger number is taken from a smaller can be read directly from the added set of numerals except that there will be an error of one unit. The machine of each party was designed to eliminate this error. This was done by gearing the numeral wheel of highest order to the numeral wheel of lowest order, so that when the register 'passes through zero' one unit would be added in on the wheel of lowest order. The machine of Carlin will not give the correct result if the carrying continue back to the numeral wheel being operated upon."

As found by the tribunals below, it is unnecessary to review the voluminous record before us, since the case turns wholly upon the inoperativeness of the Carlin device. Crumpton made a motion to dismiss the interference on this ground. The Primary Examiner denied the motion, and a large volume of evidence was taken. On final hearing, Crumpton again assailed the operativeness of Carlin's machine, whereupon Carlin set

out certain rules the application of which by the operator would obviate the objection interposed and enable the desired result to be reached on his machine. The Examiner of Interferences, upon a full consideration of the case, held the Carlin device inoperative and lacking in that degree of practical utility which would warrant the issuance of a patent. This decision was affirmed by the Board of Examiners in Chief, whose decision was affirmed by the Commissioner.

The single issue of inoperativeness and lack of practical utility within the Carlin specification is here advanced. It is not denied by Crumpton that correct results can be obtained on the Carlin machine by the application of his rules. But he insists that the application of the rules is so involved as to render the use of the device impractical. Not only is this contention well founded, but nowhere in Carlin's specification is it suggested that rules must be applied in order to reach the objective result. In other words, the machine of the issue is designed to make a correct calculation whether the result be a plus or minus quantity. It was intended to obviate the error of one unit in "passing through zero." This cannot be accomplished by the Carlin machine directly "in an endless chain of carrying operations from first to last and from last to first," as required by the counts. Before he can make the proper calculation for which the machine is designed, he must invoke his rules and make two other calculations, or, by observing closely the dials, add one additional unit under certain conditions.

The failure of the Carlin machine to indicate correctly the true result in algebraic calculations is due fundamentally both to construction and theory of operation. The art to which this invention belongs is a highly technical one. The fact that the rules would only have to be applied at irregular intervals does not aid Carlin's contention. It only adds to the difficulty of successful operation. Without the intervention of the rules, the device is inoperative. With the rules its operation becomes so complex as to render it impractical when compared with the Crumpton machine.

This case, we think, falls within the ruling of this court in *McKenzie* v. *Cummings*, 24 App. D. C. 137. The invention there involved was a vote registering machine. It appeared that about once in one hundred times it failed to register correctly. It was held that a machine for the purpose of registering votes which was not completely accurate would be worthless. So, here, a machine which fails to give with absolute certainty the correct result is so impractical and inoperative as to be worthless. The application of the rules at irregular and uncertain intervals makes the correct resultant so dependent upon the attention and skill of the operator as to bring the Carlin device in principle, at least, within the condemnation of the *McKenzie Case*.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required. *Affirmed.*